UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| FORGE FABRICATION SERVICES, L.L.C., | : | |
| NINETEEN ELEVEN, L.L.C., and | : | |
| DAVID O'REILLY, | : | |
| | : | CIV. A. NO.: 19–12393 |
| Plaintiffs, | : | |
| | : | |
| VERSUS | : | |
| | : | SECTION "____" (____) |
| KEITH O. PORTA, | : | |
| APC CONSTRUCTION, L.L.C., | : | |
| CLIFTON LARSON ALLEN, L.L.P., and | : | |
| ARTHUR J. GALLAGHER & CO. | : | JURY DEMAND |
| | : | |
| Defendants. | | |

## ORIGINAL COMPLAINT

Plaintiffs Forge Fabrication Services, L.L.C. ("Forge"), Nineteen Eleven, L.L.C. ("1911"), and David O'Reilly ("O'Reilly") bring this civil action against Defendants Keith O. Porta ("Porta"), APC Construction, L.L.C. ("APC"), Clifton Larson Allen, L.L.P. ("CLA"), and Arthur J. Gallagher & Co. ("Gallagher"), pursuant to the United States Computer Fraud and Abuse Act ("CFAA"), *see* 18 U.S.C. § 1030, and the Louisiana Unfair Trade Practice Act, *see* La. R.S. 51:1401–28 ("LUTPA"), as well as for claims of breach of fiduciary duty, fraud, breach of contract, tortious interference with a contract, civil conspiracy, and professional negligence.

## I.   EXECUTIVE SUMMARY

1.     Over the past two years, Porta and APC (a company owned and controlled by Porta) have perpetrated a fraudulent scheme against their business partners. To be specific, Porta and APC have misappropriated and stolen profits from their business partners, intentionally mismanaged their business duties to the detriment of their business partners, intentionally refused to repay debts to their business partners, and intentionally stolen business opportunities from their business partners. Making matters worse, Porta and APC have hidden their fraudulent

activities through the intentional falsification of financial documentation, intentional misrepresentations and outright lies to their business partners and other third-parties, and the intentional deletion, destruction, and concealment of various business records.  For these reasons, the Plaintiffs have brought this federal civil action against Porta and APC, as well as the professional auditing and insurance entities (namely, CLA and Gallagher), which aided Porta and APC's fraudulent scheme through their own willful participation and/or through the reckless disregard of their professional duties to the Plaintiffs.

## II.   PARTIES

2.    Plaintiff Forge Fabrication Services, L.L.C. ("Forge"), is a limited liability company organized under the laws of the State of Louisiana, with its principal place of business in the State of Louisiana.

3.    Plaintiff Nineteen Eleven, L.L.C. ("1911") is a limited liability company organized under the laws of the State of Louisiana, with its principal place of business in the State of Louisiana.

4.    Plaintiff David O'Reilly ("O'Reilly") is an individual residing in the State of Louisiana.

5.    Defendant Keith O. Porta ("Porta") is an individual residing in the State of Louisiana.  He may be served with process at his residence/regular place of business, 1910 Peters Road, Harvey, Louisiana 70058.

6.    Defendant APC Construction, L.L.C. ("APC") is a limited liability company organized under the laws of the State of Louisiana, with its principal place of business in the State of Louisiana.   It may be served with process by serving its duly authorized

Member/Manager Keith O.Porta at its principal place of business, 1910 Peters Road, Harvey, Louisiana 70058.

7.     Defendant Clifton Larson Allen, L.L.P. ("CLA") is a limited liability partnership organized under the laws of the State of Minnesota, with its principal place of business in the State of Louisiana.  It may be served with process by serving its registered agent for service of process, CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, Louisiana 70816.

8.     Defendant Arthur J. Gallagher & Co. ("Gallagher") is a corporation organized under the laws of the State of Delaware, with its principal place of business in the State of Delaware.  It may be served with process by serving its registered agent for service of process, Corporation Service Company, 501 Louisiana Avenue, Baton Rouge, Louisiana 70802.

### III.     JURISDICTION AND VENUE

9.     The Court has jurisdiction over the lawsuit under 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a).

10.     The Court may exercise personal jurisdiction over the Defendants because each is a citizen of Louisiana, and/or conducts regular, continuous, and systematic business and maintains regular, continuous, and systematic contacts within the State of Louisiana.

11.     Venue is proper in this judicial district pursuant to the provisions of 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2), because it is the judicial district in which one or more of the Defendants reside and in which a substantial part of the events giving rise to these claims occurred.

### IV.     FACTS

12.     Plaintiff Forge Fabrication Services, L.L.C. ("Forge") is a limited liability company that provides both fabrication services and electrical services for use primarily in the

oil and gas industry.  Forge has historically consisted of two separate, but related divisions: (a) Forge's fabrication services were conducted at a fabrication shop based in Belle Chasse, Louisiana, and (b) Forge's electrical services were conducted in the oil field based out of Hobbs, New Mexico.

13.     For example, Forge would construct, repair, and/or refurbish pressure vessels for use in the oil field at its Belle Chasse fabrication shop and then would ship such pressure vessels to the Hobbs site, where various electrical components would be installed on the pressure vessel before delivery to the customer in the New Mexico or West Texas oil and gas fields.

14.     Forge was originally organized in November 2016.  Between its formation and June 2019, the membership/ownership in Forge primarily consisted of: (a) Defendant Keith O. Porta and his affiliated heavy, civil-contracting company Defendant APC Construction, L.L.C. ("APC") owned fifty-one percent (51%) of Forge, and (b) Plaintiff Nineteen Eleven, L.L.C. ("1911") owned forty-nine percent (49%) of Forge.

15.     1911 is an entity owned and operated by Plaintiff David O'Reilly ("O'Reilly"). While serving as a member in Forge, APC simultaneously conducted and operated its own separate civil contracting business.

16.     During this time period, Porta and APC were the sole managing members of Forge and, thus, maintained all operational and day-to-day control over Forge.  Likewise, Porta and APC were expressly and solely responsible for all administrative/office duties pertaining to Forge, such as all operational, management, accounting, payroll, and human resources functions.

17.     In mid-to-late 2017, Porta and APC began to experience financial difficulties, and Porta began to experience his own personal difficulties.  As a consequence of these problems, Porta and APC could not obtain credit to finance their business interests or to finance Forge's

business interests.  Accordingly, Porta requested that O'Reilly make a cash loan to him and APC with the intent and expectation that the loan would be used to fund business that would be mutually beneficial to all their collective interests.  As Porta's business partner and friend, O'Reilly agreed to and did lend $200,000.00 to Porta and APC.

18.     Ultimately, the personal and business relationship between Porta and O'Reilly began to deteriorate in 2019.  In general, the parties' relationship corroded because Porta's personal demons and financial instability, combined with the overall toxicity of Porta's demeanor, disposition, and personality, made the continuation of the business relationship and friendship untenable.

19.     By May 2019, Porta and O'Reilly had agreed to wind down the operations and existence of Forge.  Thus, Porta and O'Reilly entered into a Wind Down Agreement in late May 2019.

20.     In sum, the Wind Down Agreement divided Forge's interests, assets, and liabilities between Porta and O'Reilly, as follows: (a) Porta and APC would take full ownership of the Hobbs operations and assets, and assume all responsibility for the Hobbs liabilities, and (b) O'Reilly would take full ownership of the Belle Chasse operations and assets, and assume all responsibility for the Belle Chase liabilities.

21.     In addition, Porta and O'Reilly agreed to use all Forge accounts receivables through May 2019 to pay off all payroll debts, accounts payables, and claims through May 2019 and, if there remained any revenues after doing so, Porta and O'Reilly would split these profits evenly.

22.     Lastly, Porta and APC agreed to assume and to transfer all responsibility for a secured line of credit held by Hancock Whitney Bank against Forge, to Porta and APC alone. This secured line of credit was necessary for Porta and APC to maintain the Hobbs operations.

23.     The Wind Down Agreement ultimately fell apart within a few weeks because Hancock Whitney Bank refused to transfer sole responsibility of the secured line of credit to Porta and APC.   Specifically, Hancock Whitney Bank refused to do so, because Hancock Whitney Bank determined that Porta's and APC's financial condition was way too weak and distressed to justify the transfer and assumption of the line of credit.   In addition, Hancock Whitney Bank also made it clear to O'Reilly that it had a number of serious character concerns with Porta that seriously impacted the decision to reject the transfer and assumption.

24.     After the Wind Down Agreement fell apart, the parties next entered into a Redemption Agreement, as a means to terminate the parties' relationship.   Pursuant to the Redemption Agreement, Forge immediately redeemed and acquired all of Porta and APC's membership interests in Forge.   Thus, 1911 became the sole member and manger of Forge as a consequence of the Redemption Agreement.

25.     In addition, Forge retained the secured line of credit $644,997.22 with Hancock Whitney Bank for the continued use by Porta and APC at the Hobbs operation.   Porta and APC, however, executed a promissory note payable to Forge for $561,048.72 with three percent (3%) interest, payable in the amount of $9,000.00 per month until paid in full for the right to use the secured line of credit.   Porta and APC also agreed to pay an additional outstanding debt of $83,948.50 attributable to the Hobbs operations.

26.     Additionally, the parties agreed that, forty-five (45) days after Porta and APC repaid the promissory note to Forge in full, Forge would transfer ownership of all Hobbs

operations and assets to APC.  Until that time, the parties also agreed that APC would manage the Hobbs operations, and would be solely responsible for all costs associated with the Hobbs operations, but that all revenues and profits from the Hobbs operations would belong to Forge alone as the owner of the Hobbs operations.

27.    After the Redemption Agreement, 1911 became the sole member and sole manager for Forge.  Thus, O'Reilly and 1911 had access to Forge's books and records for the first time, and also became responsible for the office, managerial, and administrative duties for the first time.

28.    Unfortunately with this change in membership, Forge, 1911, and O'Reilly have now discovered that Porta and APC have committed a number of fraudulent and wrongful acts against them before the Redemption Agreement was executed and have continued to engage in deceitful and malicious acts after the Redemption Agreement.  A number of these tortious acts and omissions are identified in the following paragraphs.

29.    Before the execution of the Redemption Agreement, Porta and APC were solely responsible for all Forge accounting and management functions.  In the performance of those duties, Porta and APC intentionally misrepresented numerous matters on Forge's balance sheets, as well as APC's balance sheets, in order to perpetrate a financial fraud against Plaintiffs.

30.    Among other things, for example, Porta and APC intentionally misclassified ownership of assets; intentionally misclassified responsibility for liabilities; intentionally concealed assets; intentionally concealed liabilities; intentionally misrepresented and misappropriated accounts receivables, profits, and revenues for Forge and attributed those same accounts receivables, profits, and revenues to APC; intentionally misrepresented accounts payable and liabilities owed by APC and attributed those same accounts payables and liabilities

to Forge; intentionally misrepresented the ownership and membership interests in Forge; intentionally misrepresented the results of reconciliation efforts between APC and Forge; intentionally commingled funds and accounts between APC and Forge; intentionally fabricated financial documentation; intentionally fabricated false bills and invoices, etc.

31.    In sum, Porta and APC concocted and perpetrated a scheme by which they would misappropriate/steal money and assets from Plaintiffs, and then concealed their malfeasance through the creation and use of fraudulent financial documentation, as well as the implementation of fraudulent invoicing and accounting practices

32.    Equally telling, Plaintiffs have also discovered that the hundreds of thousands of dollars in loans that he had made to Porta and APC for the parties' supposed mutual benefit (based largely on O'Reilly's friendship with Porta) were actually used by Porta for his own personal benefit, including the purchase of his own real estate.

33.    Plaintiffs also learned for the first time that Porta and APC had taken out and used a loan of $300,000.00 in the name of Forge before Plaintiffs became affiliated with Forge and had never informed Plaintiffs of this fact at any time.  Plaintiffs also learned that Porta and APC had been using these funds for Porta's and APC's separate business interests, not Forge's business interests, and that the loan was still being repaid with Forge revenues.  In sum, Porta and APC used approximately $116,000.00 from Forge to repay the $300,000.00 loan that Porta and APC used for their own interests after obtaining the loan behind the Plaintiffs' back.

34.    During this same time period, Defendant Clifton Larson Allen, L.L.P. ("CLA") served as the financial auditor for APC and Forge.  CLA routinely reviewed, reconciled, audited, and approved APC's and Forge's financial information and balance sheets.  CLA must have known, based on the reasonable exercise of professional diligence and basic common sense, that

Porta and APC were committing a financial fraud against Plaintiffs.   In doing so, CLA knowingly assisted, aided, and abetted Porta and APC's fraudulent efforts and also committed professional negligence.

35.    Likewise, Plaintiffs also discovered that Porta and APC have stolen business contracts and relationships from Forge through the use of fraudulent misrepresentations.   In Spring 2019, Forge entered into a business relationship with Sabinal Energy to provide oil-field services to Sabinal.

36.    Sabinal Energy first initiated work orders with Forge in March 2019 with the understanding that, after three months of trial work with Forge, Sabinal Energy would enter into a master services agreement with Forge for additional, prospective work.  In fact, Sabinal Energy had a general policy of engaging vendors, such as Forge, for a three-month trial period and then executing a subsequent master services agreement.

37.    During the existence of the business relationship between Forge and Sabinal Energy, and while Porta and APC were still managing members of Forge, Porta and APC intentionally misrepresented the relationship between APC and Forge for the purpose of stealing Forge's business relationship and masters services agreement with Sabinal.  Specifically, in May 2019 (right around the time that a masters services agreement would be negotiated and executed between Forge and Sabinal Energy), Porta and APC contacted Sabinal Energy, including Sabinal Energy's in-house legal counsel, and requested that Sabinal Energy enter into the master services agreement with APC instead of Forge.

38.    In response to Porta and APC's request, Sabinal Energy advised that Sabinal Energy did not have an existing relationship with APC and, thus, would not and could not enter into a master services agreement with APC.  Porta and APC, in turn, intentionally lied to Sabinal

Energy and falsely informed Sabinal Energy that APC was the parent company of Forge and that APC was stepping in to take over the existing relationship with Forge, as well as the impending master services agreement with Forge.

39.   After Porta and APC misrepresented the ownership and status of Forge to Sabinal Energy, Sabinal Energy negotiated and entered into the master services agreement with Porta and APC, in place of Forge.  Since that time, Porta and APC have billed hundreds of thousands of dollars of work to Sabinal Energy.

40.   In sum, Porta and APC lied to Sabinal Energy and did so for the purpose of fraudulently stealing Forge's business relationships and profits, in breach of Porta's and APC's fiduciary duties.  Forge recently learned of this wrongful behavior when Forge contacted Sabinal Energy to enter into the master services agreement and was advised that Sabinal Energy had already executed the master services agreement with APC, in lieu of Forge.

41.   Additionally, Porta and APC have failed to abide by the terms of the Redemption Agreement and have continued to engage in fraudulent activities.  For example, Porta and APC have intentionally retained accounts receivables, profits, and revenues that belong to Forge from the Hobbs operations, have intentionally misclassified accounts payables, liabilities, and claims rightfully attributable to APC as belonging to Forge from the Hobbs operations, have intentionally mischaracterized the ownership of the Hobbs operations and assets, have intentionally misappropriated monies and assets belonging to Forge, and have intentionally usurped Forge's business contracts and business opportunities for their own gain. Simply put, all these activities have been done to steal funds, monies, opportunities, and assets belonging to Forge.

42.     In addition, Porta and APC have also failed to pay the wind down costs under the Wind Down Agreement and Redemption Agreement.   These amounts are due and owing to Forge.

43.     Perhaps most disturbing of all, Porta and APC have engaged in a number of unlawful and clandestine practices in an effort to conceal their fraud and to obstruct the discovery of their fraud.   For example, in March, May, and June 2019, Porta and APC inappropriately accessed Forge's computer system/server and deleted multiple communications and documents on Forge's systems.   Porta and APC did so in an effort to prevent the discovery of their fraudulent practices.

44.     In addition, Porta and APC have destroyed, lost, and/or refused to turn over the various accounting, payroll, administrative, and other management records pertaining to Forge. Porta and APC's conduct has caused enormous difficulty for Forge.

45.     For example, Forge cannot properly operate its business and/or respond to numerous civil claims, human resource matters, audit requests, and insurance matters because Porta and APC have destroyed, lost, or withheld these Forge books and records.

46.     Along these lines, Defendant Arthur J. Gallagher & Co. ("Gallagher") has been serving as the insurance broker and agent for Forge.   Despite this role, Gallagher also has been working with Porta and APC to defraud Forge.

47.     For example, Gallagher has been attempting to force Plaintiffs to accept and to confirm Gallagher's human resources and workers compensation audits for 2018, even though Plaintiffs had no knowledge of the accuracy of the records, did not prepare the records, and simply cannot vouch for the audit results and underlying documents.   Plaintiffs contend that

Gallagher has done so in an effort to benefit Porta and APC and to trick Plaintiffs into blessing a wrong and an incorrect audit report.

48.     In addition, Gallagher has also worked with Porta and APC and, in doing so, has intentionally mischaracterized the ownership of Forge assets and liabilities (including the fabrication of a purported lease agreement), such that APC was permitted to insure Forge assets, such as heavy-duty motor vehicles, at the Hobbs operations and to recover the insurance proceeds that were due and payable to Forge.  At the same time, Gallagher advised Forge to insure the exact same assets at Forge's own expenses, but that Forge could not and should not recover the insurance proceeds payable on the covered assets.  When Plaintiffs raised concerns with this weird and incorrect arrangement, Gallagher disregarded Plaintiffs' concerns and, instead, suggested that Plaintiffs simply go along with Porta's and APC's misrepresentations. Accordingly, Gallagher has assisted and aided Porta and APC's fraudulent practices, caused Forge to pay unnecessary insurance premiums, and caused Forge to forego the insurance proceeds.

## V.     CAUSES OF ACTION

A.     <u>Count 1</u>:  Violation of the Computer Fraud and Abuse Act Against Porta and APC

49.     Plaintiffs re-allege and incorporate all of the allegations set forth above.

50.     The United States Computer Fraud and Abuse Act ("CFAA"), *see* 18 U.S.C. § 1030, applies to any computer used in interstate commerce and provides that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief."  See 18 U.S.C. § 1030(g).

51.     The civil action provision applies whenever a person: (1) intentionally accesses a computer without authorization or exceeds authorized access and thereby obtains information

from any protected computer (18 U.S.C. § 1030(a)(2)(C)); (2) knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value (18 U.S.C. § 1030(a)(4)); or (3) knowingly causes the transmission of a command, and as a result of such conduct intentionally causes damage without authorization to a protected computer, or intentionally accesses a protected computer without authorization and causes damage or loss (18 U.S.C. § 1030(5)(A), (B), or (C)).

52.    Another requirement of any civil cause of action brought under any of these subsections is that the plaintiff sustains a loss due to the conduct at issue in excess of $5,000 for any one-year period.   This $5,000 loss can be accounted for by the cost to Plaintiffs in investigating and attempting to remediate Porta's and APC's conduct.

53.    Forge's computers are used in interstate commerce through its business operations, and thus are "protected computers," because Forge conducts business throughout the nation. Further, Forge suffered a loss in excess of $5,000.00 because of Porta's and APC's conduct, including expenses related to the forensic work that was necessary to determine what items were unlawfully deleted from Forge's computers.   Porta and APC each acted "without authorization" for purposes of all of the pertinent provisions of the CFAA, and caused damage to a protected computer for purposes of all of the pertinent provisions of the CFAA.   Porta's and APC's conduct was obviously contrary to the intended use of Forge's computer system.

54.    Porta and APC acted knowingly and with intent to defraud Forge and destroy Forge's protected computer system/server through the targeted deletion of electronic communications and business records.   Porta and APC had no legitimate reason for taking these

actions.  Porta and APC destroyed Forge's electronic communications and files to conceal the discovery of their fraudulent and wrongful activities.

55.     Porta's and APC's conduct caused Forge damages, because Forge had to hire computer forensic experts to identify the communications and documents that had been deleted and to attempt to determine the extent of Porta's and APC's unauthorized conduct.

56.     Forge seeks a judgment that Porta and APC violated the United States Computer Fraud and Abuse Act, and an award of damages and fees associated with their violations.

**B.     Count 2:  Breach of Contract Against Porta and APC**

57.     Plaintiffs re-allege and incorporate all of the allegations set forth above.

58.     O'Reilly provided a loan of approximately $465,000.00 to Porta and APC with the agreement and understanding that Porta and APC would repay the loan on request.  Porta and APC have not repaid the loan.  Accordingly, Porta and APC have breached the terms of the loan agreement with O'Reilly.  O'Reilly has been damaged as a result of this breach.

59.     Porta and APC were required to pay various wind down costs, make interest payments to Forge, and to tender the revenues and profits from the Hobbs operations to Forge. Porta and APC have not paid these costs, made these payments, or remitted these revenues to Forge.

60.     More so, Porta and APC have intentionally retained accounts receivables, profits, and revenues that belong to Forge on account of the Hobbs operations, have intentionally misclassified accounts payables, liabilities, and claims rightfully attributable to APC as belonging to Forge on account of the Hobbs operations, have intentionally mischaracterized the ownership of the Hobbs operations and assets, and has intentionally usurped Forge's business contracts and business opportunities for their own gain.  Accordingly, Porta and APC have

breached the terms of their contractual agreements with Forge.  Forge has been damaged as a result of these breaches.

**C.**     **Count 3: Breach of Fiduciary Duty Against Porta and APC.**

61.     Plaintiffs re-allege and incorporate all of the allegations set forth above.

62.     Porta and APC were managing members for Forge.  Porta and APC were solely responsible for all management, accounting, payroll, and operations of Forge and, as such, had fiduciary duties to Plaintiffs, including duties of loyalty and fair dealing.

63.     As managing members of Forge, Porta and APC misrepresented numerous matters on Forge's balance sheets, as well as APC's balance sheets, in order to perpetrate a financial fraud against Plaintiffs.  Among other things, for example, Porta and APC intentionally misclassified ownership of assets; intentionally misclassified responsibility for liabilities; intentionally concealed assets; intentionally concealed liabilities; intentionally misrepresented and misappropriated accounts receivables, profits, and revenues for Forge and attributed those same accounts receivables, profits, and revenues to APC; intentionally misrepresented accounts payable and liabilities owed by APC and attributed those same accounts payables and liabilities to Forge; intentionally misrepresented the ownership and membership interests in Forge; intentionally misrepresented the results of reconciliation efforts between APC and Forge; intentionally commingled funds and accounts between APC and Forge; intentionally fabricated financial documentation; intentionally fabricated false bills and invoices, etc.

64.     In addition, Porta and APC obtained a $300,000.00 line of credit in the name of Forge, but used those funds to benefit only Porta and APC.  Porta and APC also used Forge's funds to back pack the loan.  In doing so, Porta and APC breached their fiduciary breaches to Plaintiffs.

65.     Porta and APC intentionally lied to Sabinal Energy and falsely informed Sabinal Energy that APC was the parent company of Forge and that APC was stepping in to take over Forge's existing relationship with and impending master services agreement with Sabinal Energy.  After Porta and APC misrepresented the ownership and status of Forge to Sabinal Energy, Sabinal Energy negotiated and entered into a master services agreement with Porta and APC, in lieu of Forge.  Since that time, Porta and APC have billed hundreds of thousands of dollars of work to Sabinal Energy.  In sum, Porta and APC lied to Sabinal Energy and did so for the purpose of stealing Forge's business relationships and profits, in breach of Porta's and APC's fiduciary duties.

66.     Porta and APC have engaged in a number of unlawful and clandestine practices in an effort to conceal their fraud and to obstruct the discovery of their fraud.  For example, in March, May, and June 2019, Porta inappropriately accessed Forge's computer system and server and deleted multiple communications and documents on Forge's systems.  In addition, Porta and APC have destroyed, lost, or refused to turn over the various accounting, payroll, administrative, and other management records pertaining to Forge.  Porta and APC's conduct have caused enormous difficulty for Forge.  For example, Forge cannot properly operate its business and/or respond to numerous civil claims, human resource matters, audit requests, and insurance matters because Porta and APC have destroyed, lost, or withheld these Forge books and records.

67.     Porta's and APC's breaches of their fiduciary duties have caused damages to Plaintiffs.

**D.     Count 4:  Violation of the Louisiana Unfair Trade Practices Act**

68.     Plaintiffs re-allege and incorporate all of the allegations set forth above.

69.     The Louisiana Unfair Trade Practice Act, La. R.S. 51:1401–28 ("LUTPA") prohibits unfair trade practices, which involve some element of fraud, misrepresentation, deception, or other unethical conduct.

70.     Porta and APC have engaged in false, misleading, and deceptive practices in the course of their conduct vis-à-vis Forge.

71.     Specifically, Porta and APC intentionally lied to Sabinal Energy and falsely informed Sabinal Energy that APC was the parent company of Forge and that APC was stepping in to take over Forge's existing relationship with and impending master services agreement with Sabinal Energy.  After Porta and APC misrepresented the ownership and status of Forge to Sabinal Energy, Sabinal Energy negotiated and entered into a master services agreement with Porta and APC, in lieu of Forge.  Since that time, Porta and APC have billed hundreds of thousands of dollars of work to Sabinal Energy.  In sum, Porta and APC lied to Sabinal Energy and did so for the purpose of stealing Forge's business relationships and profits, in breach of LUTPA.

72.     Plaintiffs incurred damages as a consequence of Porta's and APC's false, misleading, and deceptive practices.

73.     Notice of this Original Complaint will be sent to the Louisiana Attorney General pursuant to La. R.S. 51:1409(B) immediately upon filing.

**E.     <u>Count 5</u>:  Tortious Interference with a Contract Against Porta and APC**

74.     Plaintiffs re-allege and incorporate all of the allegations set forth above.

75.     Specifically, Porta and APC intentionally lied to Sabinal Energy and falsely informed Sabinal Energy that APC was the parent company of Forge and that APC was stepping in to take over Forge's existing relationship with and impending master services agreement with

Sabinal Energy.   After Porta and APC misrepresented the ownership and status of Forge to Sabinal Energy, Sabinal Energy negotiated and entered into a master services agreement with Porta and APC, in lieu of Forge.   Since that time, Porta and APC have billed hundreds of thousands of dollars of work to Sabinal Energy.   In sum, Porta and APC lied to Sabinal Energy and did so for the purpose of stealing Forge's business relationships and profits.

76.   Plaintiffs incurred damages as a consequence of Porta's and APC's false, misleading, and deceptive practices.   Porta and APC's actions and omissions constitute tortious interference with a contract.

**F.**    **Count 6:  Fraud Against Porta and APC**

77.   Plaintiffs re-allege and incorporate all of the allegations set forth above.

78.   Plaintiffs entered into the Wind Down Agreement and Redemption Agreement with Porta and APC.  At the time that Porta and APC entered into the Wind Down Agreement and Redemption Agreement, Porta and APC had no intentions of fulfilling the promises and representations made in the agreements.   In particular, Porta and APC had no intentions of actually managing the Hobbs operations for the benefit of Forge, of properly remitting accounts receivable, monies, and assets to Forge from the Hobbs operations, and of accurately and appropriately apportioning accounts payable, liabilities, and costs from the Hobbs operations. Instead, Porta and APC entered into the agreements in an effort to continue its fraudulent scheme of misappropriating funds, monies, and assets from Forge, in complete derogation of the terms of the agreements.

79.    Plaintiffs have been injured as a result of Porta and APC's fraudulent behavior.

**G.**    **Count 7:  Professional Negligence Against CLA and Gallagher**

80.   Plaintiffs re-allege and incorporate all of the allegations set forth above.

18

81. CLA served as the professional, independent financial auditor for Forge.

82. CLA failed to conduct its professional duties with the exercise of reasonable, professional diligence. Specifically, CLA failed to detect the fraudulent scheme perpetrated by Porta and APC against Plaintiffs. Instead, CLA approved and accepted the fraudulent practices perpetrated by Porta and APC. With the reasonable exercise of professional diligence, CLA would have and should have detected the fraudulent scheme perpetrated by Porta and APC.

83. CLA's failure to exercise professional diligence caused Forge to suffer damages.

84. Gallagher served as the professional, insurance broker for Forge.

85. Gallagher failed to conduct its professional duties with the exercise of reasonable, professional diligence. Gallagher has been attempting to force Plaintiffs to accept and to confirm Gallagher's human resources and workers compensation audits for 2018, even though Plaintiffs had no knowledge of the accuracy of the records, did not prepare the records, and simply cannot vouch for the audit results and underlying documents. Likewise, Gallagher has also worked with Porta and APC and, in doing so, has intentionally mischaracterized the ownership of Forge assets and liabilities (including the fabrication of a purported lease agreement), such that APC was permitted to insure Forge assets, such as heavy-duty motor vehicles, at the Hobbs operations and to recover the insurance proceeds that were due and payable to Forge. At the same time, Gallagher advised Forge to insure the exact same assets at Forge's own expenses, but that Forge could not and should not recover the insurance proceeds payable on the covered assets. When Plaintiffs raised concerns with this weird and incorrect arrangement, Gallagher disregarded Plaintiffs' concerns and, instead, suggested that Plaintiffs simply go along with Porta's and APC's misrepresentations.

86.     Gallagher's failure to exercise professional diligence caused Forge to suffer damages.

**H.     <u>Count 8</u>:  Civil Conspiracy Against Defendants**

87.     Plaintiffs re-allege and incorporate all of the allegations set forth above.

88.     The Defendants, in whole or in part, agreed amongst themselves to engage in a fraudulent scheme against Plaintiffs.  The Defendants committed a number of tortious acts and omissions in furtherance of their fraudulent scheme.  The Defendants obtained the results of their fraudulent scheme by misappropriating monies and assets from Forge, and then concealing the misappropriation through additional fraudulent efforts.

89.     The realization of the goals of the conspiracy caused Forge to suffer damages.  As a consequence, each Defendant is liable for the tortious acts and omissions of the other Defendants.

## VI.     JURY DEMAND

90.     Plaintiffs demand a trial by jury.

## VII.     PRAYER

For the foregoing reasons, Plaintiffs Forge Fabrication Services, L.L.C., Nineteen Eleven, L.L.C., and David O'Reilly respectfully request that Defendants Keith O. Porta, APC Construction, L.L.C., Clifton Larson Allen, L.L.P., and Arthur J. Gallagher & Co. be cited to appear and answer, and respectfully requests that the Court enter a Final Judgment against the Defendants awarding money damages (actual damages, compensatory damages, statutory damages, and exemplary damages), attorneys' fees, pre-judgment and post-judgment interest, court costs, and all other relief to which Plaintiffs are entitled to at law and in equity, including but not limited to:

1. Judgment in favor of Plaintiffs and against Porta and APC on Count One for the violation of CFAA, 18 U.S.C. § 1030, awarding damages and all other relief to which Plaintiffs are entitled under the CFAA;

2. Judgment in favor of Plaintiffs on Count Two for Porta's and APC's breach of contract, awarding damages and all other relief to which Plaintiffs are entitled under the contractual agreements and Louisiana law;

3. Judgment in favor of Plaintiffs on Count Three for Porta's and APC's breaches of fiduciary duties, awarding damages and all other relief to which Plaintiffs are entitled under Louisiana law;

4. Judgment in favor of Plaintiffs on Count Four for Porta's and APC's violations of LUTPA, awarding damages and all other relief to which Plaintiffs are entitled under LUTPA;

5. Judgment in favor of Plaintiffs on Count Five and against Porta and APC for their tortious interference with contract, awarding damages and all other relief to which Plaintiffs are entitled under Louisiana law;

6. Judgment in favor of Plaintiffs on Count Six and against Porta and APC for their fraud, awarding damages and all other relief to which Plaintiffs are entitled under Louisiana law;

7. Judgment in favor of Plaintiffs on Count Seven and against CLA and Gallagher for their professional negligence, awarding damages and all other relief to which Plaintiffs are entitled under Louisiana law; and

8. Judgment in favor of Plaintiffs on County Eight and against Defendants, awarding damages and all other relief to which Plaintiffs are entitled to as a consequence of defendants' civil conspiracy.

RESPECTFULLY SUBMITTED,


/s/ Robert P. Wynne
_____
Robert P. Wynne
The Wynne Firm, P.C.
Louisiana State Bar Number 30123
Texas State Bar Number 24060861
701 N. Post Oak Road, Suite 325
Houston, Texas 77024
E-Mail:          Bob@TheWynneFirm.com
Telephone:    (281) 813-8959
Facsimile:     (281) 949-8914


**CERTIFICATE OF SERVICE**

I certify that on August 30, 2019, I electronically filed this Original Complaint with the

Clerk of Court using the CM/ECF System.


/s/ Robert P. Wynne
_____
ROBERT P. WYNNE